# IN THE COURT OF APPEALS OF IOWA

No. 15-1945
Filed November 9, 2016

IN RE THE MARRIAGE OF MONICA DAVIDSON
AND KENNETH DAVIDSON

Upon the Petition of
MONICA DAVIDSON, n/k/a MONICA WURZER,
    Petitioner-Appellee,

And Concerning
KENNETH DAVIDSON,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Winneshiek County, Margaret L. Lingreen, Judge.

A former husband appeals the property distribution provisions of the decree dissolving his marriage. **AFFIRMED.**

Mark D. Fisher of Nidey, Erdahl, Tindal & Fisher, PLC, Cedar Rapids, for appellant.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Kenneth Davidson appeals the property distribution provisions of the decree that dissolved his marriage to Monica Davidson, n/k/a Monica Wurzer. He asks this court to modify the decree to award him a home the parties purchased in Hawkeye, Iowa, prior to the marriage and to grant him a substantial property equalization payment based on his calculation of one-half of the marital increase in the value of Monica's company. He also seeks an award of appellate attorney fees. Monica defends the district court's decree and also asks for an award of appellate attorney fees. For the reasons stated herein, we affirm the dissolution decree and decline to award either party appellate attorney fees.

Our review of a dissolution proceeding is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). "Although we give weight to the factual findings of the district court, we are not bound by them. But we will disturb a district court determination only when there has been a failure to do equity." *Id.* (citations omitted).

As noted by the district court, the marriage was of short duration, lasting just three and one-half years before Monica filed for dissolution, and the parties came into this marriage with drastically disparate net worths. Monica owned the home the parties used as the marital residence, which the district court valued at $223,150. She owned other personal property items, including guns and jewelry, and various accounts, including IRAs and an annuity, prior to the marriage. In addition, Monica came to the marriage with full ownership of a company, after having inherited her deceased former husband's share, that the district court valued at the time of the dissolution at $541,173. Kenneth argues the company

has a much higher value and points to Monica's testimony that she would not sell the company for one million dollars and maybe not even sell it for 1.5 million dollars. The district court's valuation was based on Monica's financial affidavit. Monica testified she arrived at this number after calculating the company's accounts receivables, inventory, equipment, and the checking and savings accounts. Kenneth did not offer an alternative valuation of the company. "We will not disturb the district court's valuation of assets if it is within a permissible range of the evidence." *In re Marriage of Shanks*, 805 N.W.2d 175, 177 (Iowa Ct. App. 2011).

Kenneth owned a home prior to the marriage, which he purchased for $32,000. The court found that over $15,000 worth of improvements were made to the home during the marriage, and at the time of trial, the court valued the house at $94,490. This house was awarded to Kenneth as premarital property. Kenneth is self-employed in the construction business, earning less than $10,000 per year, and during the marriage would also perform work for Monica's company, for which he was compensated.

Also prior to the marriage, the parties incorporated a charity and purchased a home in Hawkeye, Iowa, intended to be used for ministry. The court acknowledged that while the $55,000 check to purchase the home was written from Kenneth's personal account, Monica funded the purchase through her business. The home was valued at the time of trial at $93,870.

> Ordinarily, if a marriage lasts a very short time, the claim of either party to the property owned by the other prior to the marriage or acquired by gift or inheritance during the brief duration of the marriage is minimal at best. If there were wide disparities between the assets of the parties at the time of the marriage, or if one of the

parties were the recipient of a substantial gift or inheritance, the length of the marriage is a major factor in determining what the respective rights of the parties with respect to such property are at the time of its dissolution.

*In re Marriage of Wallace*, 315 N.W.2d 827, 830–31 (Iowa Ct. App. 1981) (citations omitted). A more equal division in the martial property of the parties is generally done where "the accumulated property is the product of the joint efforts of both spouses over a considerable period." *In re Marriage of Arnold*, 133 N.W.2d 53, 60 (Iowa 1965). In concluding that Monica should receive a significantly greater portion of the assets, the district court found that the marriage was short, and while Kenneth worked for Monica's company, he was paid compensation for his work and there was no evidence the work he performed increased the value of the company. We agree.

The home in Hawkeye was purchased prior to the marriage, and though purchased through Kenneth's personal account, it was funded by Monica's company, and the property was currently being used by Monica's company. Kenneth did not invest any money into the home in Hawkeye, and thus, we conclude it was equitable to award this property to Monica. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (noting the court may consider the fact property is owned prior to the marriage along with other factors such as "the length of the marriage, contributions of each party to the marriage, the age and health of the parties, [and] each party's earning capacity" to determine a equitable property distribution). Upon our de novo review of the case, we agree

with the district court's property distribution and find no reason to modify the decree.[1]

Both parties request an award of appellate attorney fees. The award of appellate attorney fees rests in our discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2010). "[W]e consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (citation omitted). After considering these factors, we decline to award either party attorney fees in light of the parties' earning capacity and the merits of the appeal.

**AFFIRMED.**

---

[1] The only other substantial asset acquired by the parties during the marriage was more than $80,000 in silver. The court stated the silver was purchased using the parties' joint account during the marriage. The court noted both parties deposited their earnings into this account, though Monica's earnings were over three times the amount of Kenneth's earnings during the time period the silver was purchased. The court therefore awarded 75% of the silver's value to Monica and 25% of the value to Kenneth. Kenneth does not contend on appeal this distribution was inequitable, and thus, we decline to address it further.